UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KWAUNTAY WATERS,

                Plaintiff,

v.

H. WASHINGTON, et al.,

                Defendants.
_____/

Case No. 1:24-cv-496

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 3.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997) *overruled in other part by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Service of the complaint on

the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director H. Washington and the following ICF personnel: Warden John Davids; Deputy Warden Unknown Vonn; Assistant Deputy Warden Unknown Dunigan; Case Workers Unknown Jansen and Unknown Milastend; Prison Counselor Unknown Santiago; and Unit Chief Unknown Maranka. Plaintiff sues each Defendant in his or her respective personal and official capacities.

Plaintiff alleges that Defendants have been deliberately indifferent to Plaintiff's mental health illness in violation of the Eighth Amendment. Plaintiff contends that Defendants have demonstrated their deliberate indifference by putting him in the "Start Now" program[2] for a second time. Plaintiff claims that this action

---

[2] The mission statement for the MDOC Start Units reads as follows: "To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population." *See, e.g.*, *Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024); *Miller v. Davids*, No. 1:20-cv-108, 2022 WL 329844, at *9 (W.D. Mich. Jan. 6, 2022).

also violates his due process and equal protection rights under the Fourteenth Amendment, his First Amendment rights, and the Americans with Disabilities Act (ADA).   Additionally, Plaintiff claims that Defendants have violated their own administrative regulations and disciplinary procedures.

Plaintiff was placed in the Start program on March 26, 2024, after receiving a misconduct ticket for substance abuse.   Plaintiff attaches the misconduct hearing report to his complaint.[3]   (ECF No. 1-1, PageID.11.)   Two Buspirone tablets were found in Plaintiff's "area of control" in his cell, which resulted in the substance abuse misconduct ticket.   (*Id.*)   Plaintiff was found guilty of the misconduct on April 18, 2024.   He was sanctioned with 20 days' loss of privileges.   It is not clear whether Plaintiff was placed in segregation pending resolution of the charge, as contemplated by MDOC Policy Directive 03.03.105, Prisoner Discipline, ¶¶ R–T (eff. Apr. 18, 2022), or in anticipation of a reclassification to segregation, as contemplated by MDOC

---

[3] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3, n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)).

Policy Directive 04.05.120, Segregation Standards (eff. June 1, 2019).[4]  Either way, Plaintiff claims he was denied the process to which he was entitled.

Moreover, Plaintiff complains not only that he was placed without process, but that he was placed in the Start program instead of normal administrative segregation.  (Compl., ECF No. 1, PageID.3.)  Plaintiff claims the only reason that he was placed in the Start program is because he has a major mental disorder.  Plaintiff does not identify the major mental disorder.

_____

[4] The policy directive for segregation standards is the same policy directive that is in effect today. The policy directive for prisoner discipline, however, has changed since the events alleged in Plaintiff's complaint. Plaintiff contends that Defendants have failed to follow their own policies and rules. These are the policy directives that include the rules at issue. The Court takes judicial notice of the versions of those policy directives in effect at the time of the events alleged in Plaintiff's complaint. *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 568 n.13 (2007) (noting that the district court "was entitled to take notice of the full contents of the published articles referenced in the complaint"); *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims"). The MDOC's policy directives are a proper subject of judicial notice under Fed. R. Evid. 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned' "); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("a Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). The content of the policy directives at issue are not subject to reasonable dispute. They are published by the MDOC on its publicly available government website. The Court notes that taking judicial notice of the policy language says nothing about whether Defendants complied with the policies.

It is not clear why Plaintiff believes that administrative segregation would be preferable to the Start Unit.  The only facts he alleges with regard to Start Unit restrictions are as follows: "not allowed to order any store food items, no library/law library, no gym, no JP6 player, no securepak orders, no GP-yard, no out of cell with[]out handcuffs on, no program TV, only one phone call per-week, can[]not properly clea[n] my cell my[]self, no fundraiser."  (Compl., ECF No. 1, PageID.3.) Those restrictions, however, appear to be the same restrictions imposed on prisoners in detention and/or administrative segregation.  *See* MDOC Policy Directive 03.03.105, Prisoner Discipline, ¶¶ R–T (eff. Apr. 18, 2022); MDOC Policy Directive 04.05.120, Segregation Standards (eff. June 1, 2019).

Plaintiff seeks a declaratory judgment stating that Defendants have violated Plaintiff's rights and also setting out the Defendants' duties to Plaintiff.  He also seeks injunctive relief compelling Defendants to release Plaintiff from the Start program.  Finally, Plaintiff seeks $700,000.00 in compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must

7

determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    No Specific Factual Allegations Regarding Each Defendant

After identifying the eight Defendants in the caption and then listing them at the beginning of his factual allegations, Plaintiff never specifically references any one

of the Defendants in the remainder of the complaint.  Instead, he simply uses the collective term "defendants" and ascribes each alleged violation to the group.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Moreover,

> [t]his court has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right.

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (citation omitted).  Therefore, Plaintiff's claims against "Defendants" fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal.  Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  Put differently, Plaintiff has failed to state a claim upon which relief may be granted against any of the individual defendants.

### B.    Eighth Amendment

Plaintiff claims that Defendants have demonstrated "deliberate indifference to Plaintiff's mental health illness in violation of the constitutional Eighth Amendment prohibition against cruel and unusual punishment."  (Compl., ECF No. 1, PageID.2.)

Additionally, Plaintiff complains about the restrictive conditions of confinement in the Start Unit. The Court first addresses Plaintiff's claims about restrictive conditions.

### 1.      Restrictive Conditions

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the

defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).   The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.

Here, Plaintiff is obviously displeased with the Start program; but he does not identify why the conditions there create a substantial risk of serious harm to him. The conditions he describes are the same that he would face in the segregation program that he claims to prefer.  "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th. Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x. 553, 556 (6th Cir. Dec.8, 2003) (internal quotation marks omitted)).[5]

---

[5] It is not the case that conditions in segregation can never be sufficiently harmful to constitute cruel and unusual punishment. For example, "[p]lacement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative

Accordingly, Plaintiff has failed to state an Eighth Amendment claim relating to the conditions of his confinement in the Start program.

### 2.     Failure to Treat Mental Health Illness

The Eighth Amendment obligates prison authorities to provide medical care, including mental health care, to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702.

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 104–05.

---

psychological effects of his segregation will drive him to self-harm.'" *J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) (citation omitted)). But here, Plaintiff is not saying that the Start program conditions are cruel and unusual compared to conditions in the general population. Instead, he is suggesting that conditions in the Start program are cruel and unusual compared to conditions in segregation. The only factual support Plaintiff offers regarding the conditions in the Start program is a listing of the privileges he loses by being in the program. Those appear to be the same privileges he would lose in segregation. Thus, it appears that the burden on Plaintiff as a mentally-ill detainee would be the same.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment,"

*Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff alleges only that he suffers from a major mental illness. He does not allege any particular symptoms or other facts to support the inference that the illness meets the objective standard of seriousness. Moreover, he does not make any allegations regarding the treatment he has or has not received. Finally, he does not allege any facts regarding the consequences that have followed the alleged failure to treat. Because Plaintiff has failed to allege facts in support of the objective standard, he has failed to state a claim for deliberate indifference to a serious medical need.

Even if Plaintiff has made sufficient allegations on the objective standard, he has failed to allege that any Defendant satisfies the subjective standard. Accepting that Plaintiff's mental illness poses a substantial risk of harm, Plaintiff has failed to allege facts that support the inference that at any Defendant was aware of that risk

14

and then disregarded it. So, Plaintiff has failed to allege facts on the subjective prong of the Eighth Amendment analysis as well. Thus, on both prongs of the analysis, Plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted.

### C. Due Process

Plaintiff contends that Defendants could not send him to the Start program (or segregation for that matter), without having a hearing because, Plaintiff argues, such a hearing is required by due process. That is not the case.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff alleges he has a liberty interest that is protected by due process as set forth in the MDOC policy requirement that an administrative hearing precede assignment to segregation (or the Start program). But, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, *250* (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); ); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232,

15

240 (6th Cir. 1992).  Thus, Plaintiff's allegation that Defendants violated prison policy therefore fails to raise a cognizable federal due process claim.

Nonetheless, Plaintiff's search in the policy directives and regulations for "language of an unmistakably mandatory character" to support a liberty interest is understandable.  *Hewitt v. Helms*, 459 U.S. 460, 471 (1983).  Under *Hewitt*, it was the presence of such mandatory language in procedural guidelines that might give rise to a protected liberty interest.  *Id*. at 469–72.  That framework was rejected and replaced in *Sandin v. Conner*, 515 U.S. 472 (1995).

The *Sandin* Court concluded that a prisoner would not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 487.  Nothing about Plaintiff's class I misconduct conviction or his placement in the Start program will inevitably impact the duration of his sentence. For a prisoner like Plaintiff, who is serving sentences for offenses committed during or after 2018, a major misconduct conviction results only in the accumulation of "disciplinary time."  Mich. Comp. Laws § 800.34.  Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole.  *Id.* § 800.34(2).  It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination."  *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).  None of

Plaintiff's allegations support the inference that Defendants impacted the duration of Plaintiff's sentences in any way.

Furthermore, Plaintiff does not allege any facts suggesting that either the loss of privileges sanction for his misconduct or his placement in the Start now program resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487.  As noted above, Plaintiff has not identified any restriction he faces in the Start program that is different than the restrictions he would face in segregation.  The Supreme Court has held that the restrictions of segregation "[are] the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468.  Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794).

The Sixth Circuit Court of Appeals has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship, *see Joseph, 410 F.* App'x at 868; *see also, e.g., Jones v. Baker*, 155 F.3d 812, 812–23 (6th Cir. 1988) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been

found to be atypical and significant.  *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).  In light of that authority, the Court concludes that Plaintiff has failed to identify an atypical and significant hardship that might give rise to a protectible liberty interest. Accordingly, Plaintiff has failed to state a Fourteenth Amendment procedural due process claim.

### D.    Equal Protection

Plaintiff uses the words "Equal protection" at one point in his complaint.  (ECF No. 1, PageID.2.)  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated.[6]  Instead, any allegations of discriminatory treatment are wholly conclusory.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## E.  ADA

Plaintiff uses the words "Americans with Disabilities Act" and the acronym "ADA" at one point in his complaint.  (ECF No. 1, PageID.2.)  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

---

[6] Plaintiff notes he is in the Start program because of his mental illness. Mental illness, however, is neither a necessary nor a sufficient condition for participation in the program. The "targeted prisoner population groups for placement in a Start Unit" include "[p]risoners who have been diagnosed with serious mental illness . . . whose disruptive behavior would warrant reclassification to administrative segregation." MDOC Director's Office Memorandum 2024-4 (eff. Jan. 1, 2024). But there are other targeted groups that are not defined by diagnosis with a mental illness. *Id*. And, prisoners who have been diagnosed with serious mental illness are not targeted by the program unless they engage in disruptive behavior that would warrant reclassification to administrative segregation.

such entity."  42 U.S.C. § 12132.  The ADA "prohibit[s] public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs."  *Finley v. Huss*, 102 F.4th 789, 819–20 (6th Cir. 2024).  Therefore, to state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability."  S.S. v. E. Ky. Univ., 532 F.3d 445, 453 (6th Cir.2008).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998).  The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their official and individual capacities.  Because Plaintiff may not pursue ADA claims against Defendants in their individual capacities, any intended ADA allegations against Defendants in their individual capacities fail to state a claim upon which relief may be granted.

As to Plaintiff's official capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47.  At this stage of the proceedings, the Court assumes, without deciding, that Defendants are not immune from liability in

20

their official capacities under the ADA.  *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA claims, Plaintiff states in a conclusory fashion that he has "major mental illness disorder."  (ECF No. 1, PageID.3.)  He offers no further clue as to the nature of his disability.  "The ADA's definition of 'disability' includes: '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 533 (6th Cir. 2024).  Plaintiff's generic reference to a mental illness does not suffice.

In *Wallace v. Trumbull Memorial Hosp.*, 970 F. Supp. 618 (N.D. Ohio 1997), the court faced a similarly nonspecific description of the disability: "Plaintiff has alleged that she suffers from a 'mental/emotional' disability . . . ."  *Id.* at 620.  The court rejected the claim concluding that "Plaintiff fail[ed] to identify her disability with specificity and further fail[ed] to identify how said disability substantially limits any major life activity."  *Id.*; *see also Adams v. The Vanderbilt Univ.*, No. 3:23-cv-00001, 2024 WL 1182861, at *17–18 (M.D. Tenn. Mar. 19, 2024) (stating "Plaintiffs never articulate any specific condition with which Adams was allegedly mentally ill.  Mental illnesses of various sorts can certainly qualify as a disability under the ADA, see 29 C.F.R. § 1630.2(h)(2), but 'where, as here, a party alleges that he or she is disabled under the ADA, courts have generally required the party to plead the disability with some factual specificity'" and "[a]dditionally, the [first amended

complaint] fails to plausibly allege that Adams's mental impairment—an unspecified mental illness—'substantially limits one or more of the major life activities' of an individual, as is required to meet the definition of 'disability' under the ADA'"). Plaintiff fails to provide any specificity with regard to the nature of his disabling mental illness or how it limits his major life activities.  Accordingly, he has failed to state a claim under the ADA.

Even assuming that Plaintiff's mental health condition—whatever that may be—falls within the definition of "disability," Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability.  The only thing Plaintiff claims he was denied was segregation.  Segregation can hardly be described as a service or program; it is a consequence of a serious misconduct or inability to be managed in the prison's general population.  Plaintiff's conclusory allegations of discrimination without specific supporting factual allegations fail to state a claim.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  For these reasons, Plaintiff's ADA claims will be dismissed.

### F. Violations of State Policies and Regulations

Finally, as noted above, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).   In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed with prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims, if any, will be dismissed without prejudice because the Court declines to exercise jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  September 30, 2024                    /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge

24